UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

THOMAS LUCAS, SR.,

                Petitioner,

  -against-

DAVID L. MILLER, Superintendent, Eastern
Correctional Facility,

                Respondent.

------------------------------------------------------------x

**REPORT AND RECOMMENDATION TO THE HONORABLE DEBORAH A. BATTS**[*]

02 Civ. 9303 (DAB)(FM)

**FRANK MAAS,** United States Magistrate Judge.

I.    Introduction

      Petitioner Thomas Lucas, Sr. ("Lucas") brings this pro se habeas corpus proceeding pursuant to 28 U.S.C. § 2254 to challenge his conviction, following a jury trial, on two counts of Criminal Sale of a Controlled Substance in the Third Degree, one count of Criminal Possession of a Weapon in the Third Degree, and three counts of Criminal Possession of a Weapon in the Fourth Degree in Supreme Court, New York County. (See Pet. ¶¶ 4, 6). On January 4, 2000, the trial judge, Justice William Wetzel,

---

[*]    This Report and Recommendation was prepared with the assistance of Christine Chuang, a student at the University of Pennsylvania Law School, who served as an intern in my Chambers this summer.

1

sentenced Lucas to concurrent and consecutive terms which, in the aggregate, amounted to a sentence of fourteen to twenty-four years. (See S. 16-17).[1] In his petition, Lucas contends that there was neither probable cause nor exigent circumstances which would justify the arresting officers' warrantless entry into his apartment to effect his arrest. (Pet. ¶ 12.(C)). For the reasons set forth below, the Court may not consider this claim. Accordingly, Lucas' petition should be denied.

II. Factual and Procedural Background

    A. Trial

The proof at trial established that from September 1998 to November 1998, undercover police officers were trying to make a case against certain persons who were selling narcotics in the vicinity of 66 West 127th Street in Harlem. (T. 34-35, 188). During that period, the officers purchased quantities of heroin and crack cocaine there from Lucas and his associates on September 3 and 24, October 16, and November 12, 1998. (See id. at 36-78, 188-208).

On November 12, 1998, a team of officers were stationed in a building at 60 East 129th Street which was known to be used by the same group of drug dealers. (Id. at 279, 284-88). After undercover officers purchased crack cocaine that day from two

---

[1] "S." refers to the transcript of the sentencing, held on January 4, 2000. "P." refers to the transcript of the pretrial hearing held on November 15, 1999, before Justice William Wetzel. "T." refers to the transcript of the state court trial held on November 17-23, 1999. "Ex." refers to the exhibits attached to the Declaration of Assistant Attorney General Beth J. Thomas, dated February 25, 2003.

individuals, other police officers moved in to arrest them. (Id. at 284-88). The arrests took place as the two individuals were entering Lucas' apartment. (Id. at 288). Everyone else in the apartment, including Lucas, also was arrested. (Id. at 288-90, 336-37). During a subsequent search, the officers recovered money, drugs, and weapons from the apartment. (Id. at 291-300, 339-48).

B.  Suppression Hearing

Prior to trial, Lucas moved to suppress the evidence seized at his apartment as well as his post-arrest statements. (P. at 92-94). During a pretrial hearing, Sergeant Archie Washington ("Washington") and Detective Calvin Green ("Green") testified. Their testimony established that Washington was the supervisor and Green an investigator assigned to a long-term investigation into drug sales in the vicinity of 127th Street between Lenox and 5th Avenue. (Id. at 10-11, 108-09). As part of this investigation, undercover officers were sent to West 127th Street on several occasions to buy narcotics. (Id. at 17, 109-10).

One of the successful narcotics transactions took place on October 16, 1998, when Green sent undercover officers to the area to make a purchase. (Id. at 28). In the course of that transaction, three men – later identified as Lucas, his son Thomas Lucas, Jr. ("Lucas, Jr."), and Andre Bly ("Bly") – got into the undercovers' car and were driven to a photo studio. (Id. at 29-30, 33). After the men left the photo studio, they reentered the undercovers' car and were driven to 127th Street. (Id. at 31). From there,

they walked to 129th Street and entered a building located at 60 East 129th Street. (Id.). A little while later, Bly and Lucas, Jr. came out of the building and sold narcotics to the undercover officers in their car. (Id.).

The officers returned to the area on November 12, 1998, to make a further purchase as part of a "buy and bust" operation. (Id. at 17-18). While an undercover was making the buy, Washington, Green, and two other detectives were stationed between the third and fourth floor landings of a staircase inside 60 East 129th Street. (Id. at 19-22). Green received a radio transmission from the undercover officer confirming that it was a "positive buy," and giving him a description of the individuals involved. (Id. at 24). As Bly and another man entered the building and approached Apartment 3C, the officers ran there to arrest them. (Id.). The arrests took place in the entryway because the suspects had "stepped into the apartment." (Id.). During the ensuing "melee," Lucas came out of a bedroom to see what was happening and then ran back into the room. (Id. at 24-25). Everyone in the apartment then was placed under arrest. (Id. at 27). After obtaining a search warrant, the police conducted a search, which led to the recovery of approximately one hundred envelopes containing heroin, as well as weapons and money. (Id. at 27-28).

Following the arrests, Lucas was brought to the 28th Precinct and placed in a holding cell, where he was identified by the undercover officer. (Id. at 34, 36-37). After reading Lucas his Miranda rights, and securing a written acknowledgment, Green asked Lucas about his drug operation. (Id. at 37-42). During this conversation, Lucas

4

appeared sober and "very alert" and he provided the requested information. (Id. at 40-42, 44-45).

At the conclusion of the hearing, Justice Wetzel denied Lucas' suppression motion. (P. at 127). Subsequently, in a decision rendered from the bench while the jury was deliberating, (see T. 566-72), the Justice concluded that Lucas' warrantless arrest did not violate Payton v. New York, 445 U.S. 573 (1980), because the entry into the apartment was made with probable cause under exigent circumstances. (Id. at 571-72). With respect to the issue of probable cause, the Justice noted that Lucas was known to the arresting officers as someone who had been involved in at least three prior sales to undercovers. (T. 570-71). With respect to the issue of exigency, the Justice concluded that

> [b]ased upon the factual showing at th[e] hearing there were urgent events taking place; namely, the arrest of the two individuals who were fleeing into the apartment at the very time there was an attempt to take them into custody. These events made it impossible for the officers to suspend their activity and obtain a warrant, so as to preserve evidence, or the contraband threatened with removal or destruction, or to prevent the arrestees from absconding.

(Id. at 571-72).

Finally, with respect to Lucas' post-arrest admissions, the Justice concluded that "the statement given by [] Lucas was custodial, [but,] however [] he was given his Miranda warning, he made a knowing and voluntary wa[i]ver of those rights as evidenced by the [written acknowledgment form]." (Id. at 572).

5

C. Lucas' Appeals

Following his sentencing on January 4, 2000, Lucas filed an appeal in which he raised five issues. First, Lucas contended that the trial court's finding of exigent circumstances was not supported by the record because the police created any exigency that may have existed. (Ex. A (Def.'s Br.) at 18-31). Second, Lucas claimed that the trial court violated his Sixth and Fourteenth Amendment right to a public trial by screening potential spectators without conducting a hearing. (Id. at 32-35). Third, Lucas asserted that the trial court violated his Sixth and Fourteenth Amendment rights to confront and cross-examine witnesses and to due process by allowing the undercover officers to testify anonymously. (Id. at 35-38). Fourth, Lucas contended that his prison sentence was excessive. (Id. at 39-45). Finally, Lucas alleged that the trial court's Sandoval[1] ruling with respect to his prior conviction was erroneous. (Id. at 46-48).

On January 15, 2002, the Appellate Division, First Department, unanimously affirmed Lucas' conviction. (Ex. D). Insofar as his Fourth Amendment claim was concerned, the court stated that the trial court

> properly concluded that the warrantless arrest of defendant in his apartment was valid and denied suppression of drugs in plain view and other alleged fruits of the police entry. In this long-term investigation, the police had the vicinity of defendant's apartment under surveillance and were planning to arrest two of defendant's accomplices on the day in question. Although there was ample probable cause for

---

[1] See People v. Sandoval, 34 N.Y.2d 371, 374 (1974).

> defendant's arrest, the police had no intention of arresting him
> that day or of entering his apartment. Immediately after the
> two accomplices consummated a drug transaction with an
> undercover officer, the police attempted, as planned, to make
> a lawful warrantless arrest of them but they frustrated that
> plan by retreating into defendant's apartment. This permitted
> the police to make a warrantless entry in pursuit. Moreover,
> the officers had reason to believe, based on their familiarity
> with the sellers' participation in prior drug sales, that a
> successful retreat into the apartment would have resulted in an
> attempt to remove or destroy evidence or perhaps to flee from
> another exit.

People v. Lucas, 736 N.Y.S.2d 332, 333 (1st Dep't 2002) (internal citations omitted).

By letter dated February 22, 2002, supplemented by a letter to Chief Judge Judith Kaye, dated March 18, 2002, Lucas sought leave to appeal to the New York Court of Appeals on several grounds, including his claim that there was neither probable cause nor exigent circumstances justifying the warrantless entry into his apartment. (Ex. E). That application was summarily denied on June 27, 2002. People v. Lucas, 98 N.Y.2d 677 (2002).

Lucas' pro se petition is dated October 10, 2002, and was timely received by the Pro Se Office of this Court on October 23, 2002. (Pet. at 9). In his petition, Lucas' only contention is that the state court's decision concerning the warrantless entry into his home was incorrect. (See Pet. at 5).

III. Discussion

   A. Standard of Review

A habeas corpus petition is not a vehicle to relitigate every issue previously determined in state court. Herrera v. Collins, 506 U.S. 390, 401 (1993). Instead, a state prisoner seeking habeas relief under Section 2254 must show by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petitioner thus has the burden of proving, by a preponderance of the evidence, that his rights have been violated. Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997).

Section 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides, in part, that:

> An application for a writ habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was <u>contrary to</u>, or involved an <u>unreasonable application of</u>, clearly established Federal law, as determined by the Supreme Court of the United States.

28 U.S.C. §2254(d) (emphasis added).

The Supreme Court has "construed the amended statute so as to give independent meaning to the terms 'contrary [to]' and 'unreasonable.'" Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the

8

Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application" clause, a federal habeas court should "ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. This standard does not require that reasonable jurists would all agree that the state court was wrong. Id. at 409-10. Rather, the standard "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'" Stinson, 229 F.3d at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 109 (2d Cir. 2000)). Section 2254(d)(1) only applies, however, "with respect to claims adjudicated on the merits in state court." Williams, 529 U.S. at 412.

Section 2254(d)(2) further authorizes the federal courts to grant a habeas writ when a claim considered on the merits in state court "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). To the extent that a habeas petition challenges factual findings, Section 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct" and that "[t]he [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

"If, after carefully weighing all the reasons for accepting a state court's judgment, a federal court is convinced that a prisoner's custody . . . violates the Constitution, that independent judgment should prevail." Williams, 529 U.S. at 389.

B. Fourth Amendment Claim

Lucas' claim that he was arrested without probable cause and in the absence of exigent circumstances, in violation of Payton, cannot be considered on habeas review in light of the Supreme Court's decision in Stone v. Powell, 428 U.S. 465 (1976). Pursuant to that decision, "federal habeas corpus relief is not available on the ground that evidence produced at trial was the result of an unconstitutional search and seizure, unless the state denied the prisoner an opportunity for full and fair litigation of the claim." Grey v. Hoke, 933 F.2d 117, 121 (2d Cir. 1991). Thus, a Fourth Amendment claim can be addressed on habeas review only when (1) the state has provided no corrective procedures at all to redress the alleged Fourth Amendment violations, or (2) there is a corrective mechanism, but the defendant was unable to use it because of an "unconscionable breakdown in the underlying process." Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992) (citing Gates v. Henderson, 568 F.2d 830, 840 (2d Cir. 1977) (en banc)).

The State of New York clearly has provided defendants such as Lucas with the necessary corrective procedures through Section 710 of the New York Criminal Procedure Law ("CPL"). See Capellan, 975 F.2d at 70 n.1 ("federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in

[CPL] § 710.10 et seq. (McKinney 1984 & Supp. 1988), as being facially adequate") (quoting Holmes v. Scully, 706 F. Supp. 195, 201 (E.D.N.Y. 1989)); Vega v. Artuz, No. 97 Civ. 3775 (LTS), 2002 WL 252764, at *12 (S.D.N.Y. Feb. 20, 2002). Therefore, in order to secure habeas relief, Lucas must demonstrate that there was a breakdown in the state process – which typically consists of some sort of "disruption or obstruction of a state proceeding." Capellan, 975 F.2d at 70 (quoting Shaw v. Scully, 654 F. Supp. 859, 864 (S.D.N.Y. 1987)). Here, no such showing can be made because the trial court conducted an extensive pretrial hearing. Accordingly, because Lucas was given a full and fair opportunity to litigate his Fourth Amendment claim prior to trial, it cannot be entertained by this Court.

IV. Conclusion

For the foregoing reasons, Lucas' habeas petition should be denied. I further recommend that a certificate of appealability not be issued.

V. Notice of Procedure for Filing Objections to this Report and Recommendation

The parties shall have ten (10) days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a) and (e). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of Honorable Deborah A. Batts at the United States Courthouse, 500 Pearl Street, New York, New York 10007, to my chambers at the United States

Courthouse, 500 Pearl Street, New York, NY 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Batts. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b).

Dated:    New York, New York
          August 17, 2005

/FRANK MAAS
United States Magistrate Judge

Copies to:

Honorable Deborah A. Batts
United States District Judge

Thomas Lucas, Sr., 00-A-0692
Eastern Correctional Facility
P.O. Box 338
Napanoch, New York 12458-0338

Beth J. Thomas, Esq.
Assistant Attorney General
Office of the Attorney General
of the State of New York
120 Broadway
New York, New York 10271